### McCARTHY et al. v. CENTRAL DREDGING CO.

(Circuit Court of Appeals, Second Circuit. February 10, 1913. On Reargument on Question of Costs, April 15, 1913.)

#### No. 27.

1. SHIPPING (§ 76*)—CONTRACT FOR SERVICES IN RAISING SUNKEN VESSEL—SUIT FOR BREACH.

Evidence considered, in a suit to recover for services, including those of a diver, rendered in attempting to raise a sunken scow, under a contract for per diem compensation, in which a cross-libel was filed for damages because of the alleged failure of the diver to properly perform the work he undertook to do, which rendered it ineffective, and *held* to in part sustain the claim of each party, and to entitle libelants to recover for a part of the services, which were properly performed, and respondent to recover damages sustained through the negligent performance of other portions of the work.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 323–325, 327–331; Dec. Dig. § 76.*]

2. DAMAGES (§ 123*)—BREACH OF CONTRACT—MEASURE OF DAMAGES.

Where, in such case, respondent abandoned the attempt to raise the scow by pumping it out, which failed only because the diver failed to properly stop a hole in the hull, and adopted a new and more expensive method, it was not entitled to recover as damages the cost of raising the vessel by the latter method, but not to exceed the cost of employing another diver, who might have corrected the fault and rendered the work done effective.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 320–325; Dec. Dig. § 123.*]

Appeal from the District Court of the United States for the Western District of New York; John R. Hazel, Judge.

Suit in admiralty by Jeremiah J. McCarthy and James J. McCarthy against the Central Dredging Company, with cross-libel. Decree for libelants, and respondent appeals. Reversed.

For opinion below, see 191 Fed. 670.

The libel was brought to recover compensation, at an agreed price of $35 per day, for the services of a diver, and $26, the agreed value of certain material supplied in connection with the diver's work. The cross-libel was for damages alleged to have been sustained by respondent in consequence of the diver failing properly to perform the work he undertook to do.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

R. M. Calfee, of Cleveland, Ohio (Calfee & Fogg, of Cleveland, Ohio, of counsel), for appellant.

J. B. Richards, of Buffalo, N. Y. (Brown, Ely & Richards, of Buffalo, N. Y., of counsel), for appellees.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. [1] Respondent's mud scow was sunk in 22 feet of water in Buffalo creek, and libelants made a contract to furnish a diver in their employ, one Marr, and to assist him in his work. The rate agreed upon was $35 per day. Marr and one of the McCarthys proceeded to the locality, and by direction of respondent the former descended and knocked out the dogs, which released the pockets of the scow, which had sunk fully loaded. He also aided in sweeping a cable underneath the scow, and then left for the day. An effort was made to lift the sunken craft with dredges, but it was unsuccessful. A few days afterwards McCarthy and Marr, with their pumps and diving outfit, returned to the scow. In the meantime a carpenter, who did some diving, had been down and reported that the deck on the upstream end had been crushed in. Marr was directed there as the place of damage. It was the intention of the respondent to raise the scow by pumping, an operation which made it necessary first to patch up all holes, so that, when the pump sucked out the water which had filled the air spaces, other water would not run in to take its place. Marr reported the conditions which he found, and set to work building over and patching up the broken end. A well was also built up from the other end, so that a pump could work. Marr looked and felt over the deck and sides of the scow, and reported that there were no more holes. A 6-inch pump was installed and set to work. It proved very unsatisfactory and kept continually breaking down. So it was discontinued until a few days later, when a powerful 12-inch pump was procured and set to work with the 6-inch one. No lowering of the water in the well being observed, Marr again went down, and came up, saying he had located a hole in the deck near the well. He supplied himself with a plank 44 inches by 10 inches and a strip of canvas, went down, and nailed them over the hole. Upon coming up he reported that all holes were stopped so far as he could find. The pumps were driven for some minutes more, but they made no impression on the water in the well. Respondent thereupon, believing there was some hole in the bottom which could not be got at, sent away the pumps and gave up the attempt to raise her in that way. Subsequently she was raised by jacks, and when her decks came up to the surface of the water it was discovered that the hole near the well had not been entirely covered by the plank. It further appeared that there were no holes in the scow's sides, pockets, or bottom, and that she was sound and tight, except for the deck holes.

Raising by jacks is a more expensive process than raising with a pump, and the cross-libel sought to recover the difference of cost between the two methods as the damages alleged to have been sustained from Marr's imperfect work. The first day's work, knocking out the dogs, was properly done, and the $35 earned. The next job, building

up the broken ends, was we think sufficiently well done to earn per diem for the eight days it took, and to recover for the materials used. One of the experts disclosed an easier and perhaps a better way; but there is not enough to condemn Marr's method. Moreover, he disclosed his method, and no one objected to it. According to his method he did a workmanlike job. The evidence does not satisfy us that there was any leak through it sufficient to neutralize the big pump. All experiments with the small pump may be disregarded. It was continually breaking down and unfit for service. This brings us to the last day.

We are satisfied that Marr did not do his work, patching the hole near the well, in a workmanlike manner, and did not earn the $35. Buffalo creek is very muddy, and it is difficult to detect anything by sight at a depth of 9 feet, where the deck lay, and there was much mud on the deck. If it were a question of failing to discover a hole under these circumstances, the situation might be different. But he did find a hole, and knew it was a large one, since he provided himself with a piece of plank 44 by 10 inches to nail over it. It seems to us that it would have taken a very little time and trouble to shovel off the mud·sufficiently to allow the diver to feel around the edges, and thus determine the exact size and shape of the hole, and, these once known, it would have been an easy job to cover it completely.

Judge Hazel evidently accepted the story of Marr and McCarthy, who by request of respondent were present when the scow was raised by jacks, that the uncovered part of the hole was trifling in extent—"about 10 inches where you could get your fingers in." We do not agree with him. It is well established that there were no holes, except in the deck, and, if there were only this small leakage at the hole, the 12-inch pump would very quickly have shown results in the well. The plank was fastened diagonally across the hole. Maybe it was not put on exactly as shown in the diagram submitted by respondent; but we are sure it was not put on as it should have been, and therefore left a space sufficient to neutralize the action of the 12-inch pump.

[2] We are further of the opinion that libelants are bound to compensate the owner of the scow for the negligence of the diver in failing properly to cover the hole. This would be the amount it would have cost (with perhaps some allowance for delay) to send another diver down to go over the work. It is not claimed that libelants intentionally misled the owner, and the owner had no right, after a few minutes pumping and no further investigation, to abandon that method of raising the vessel and hold the libelant responsible for the large expense of raising the vessel in a different way. If, when the pump failed to work, the diver had been sent down again, the trouble might readily have been found and remedied. Or if another diver had been sent down, the same result might have followed. Certainly, if libelants had been told that, if any·defects were found in Marr's work when the vessel came up, a claim would be made that they were liable to pay the expense of raising her in another way, they would have insisted (and we think they would have the right to insist) upon further investigation and experiment.

The decree is reversed, with costs to respondent of this appeal, and cause remanded, with instructions to decree in conformity with this opinion.

### On Reargument on the Question of Costs.

PER CURIAM. The respondent was wholly defeated in the court below, it being held that negligent workmanship on the part of libelant was not proved. Respondent prevailed in this court, it being held that libelant was negligent and that respondent was entitled to counterclaim for such damages as it could prove resulted from such negligence. That being so, it would be unfair to compel it to bear the entire cost of the appeal, in which it prevailed on the main question. Respondent, however, did not succeed in convincing this court that it was entitled to the measure of damages it contended for, and the record, briefs, and arguments were longer than they would have been, had it not endeavored to sustain an unreasonably large claim for damages. To that extent its appeal was unsuccessful.

Under these circumstances, it would seem fair to give appellant one-half costs of appeal. The mandate may be recalled and amended accordingly.